**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4683**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

   v.

DONALD RAY CANTRELL,

       Defendant – Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. John Preston Bailey, District Judge. (2:16-cr-00005-JPB-MJA-1)

Argued: October 25, 2017              Decided: December 1, 2017

Before MOTZ, SHEDD, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Brian Joseph Kornbrath, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. Stephen Donald Warner, OFFICE OF THE UNITED STATES ATTORNEY, Elkins, West Virginia, for Appellee. **ON BRIEF:** Betsy Steinfeld Jividen, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Donald Ray Cantrell was named in a three-count indictment charging him with possession with intent to distribute methamphetamine (Counts One and Three) and distribution of methamphetamine (Count Two). He pled guilty, pursuant to a written plea agreement, to Count Three, possession of methamphetamine with intent to distribute, 21 U.S.C. § 841(b)(1), and received a within-Guidelines sentence of 70 months of imprisonment. He appeals, claiming that the district court clearly erred in imposing a two-level increase to his base offense level for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1). For the following reasons, we affirm.

I.

Count One of the indictment was based on an arrest that occurred on March 11, 2015. On that day, Cantrell was present inside a residence during a home confinement check on a female supervisee in Randolph County, West Virginia. Deputies inspected the home pursuant to the supervision terms, and they discovered in plain view a plastic bag containing 23.1 grams of 88.2% pure methamphetamine. After obtaining a search warrant, they also found inside the residence $1,019.38, a digital scale, a plastic bag containing suspected marijuana, and an assortment of pills.

Count Two was based on a September 29, 2015, arrest arising from a controlled buy of crystal methamphetamine by the West Virginia State Police. During a recorded phone call, Cantrell told a confidential informant to go to the parking lot of the Central School Apartment Building in Randolph County, and he would send a third party down to make the exchange. In the parking lot, the confidential information gave $150 to the

2

third party who then gave the confidential informant approximately one half gram of methamphetamine.

Count Three was based on an arrest that took place on March 10, 2016. A warrant had been issued for Cantrell's arrest based on Counts One and Two, and a U.S. Forest Service Law Enforcement Officer located Cantrell in Randolph County. The officer activated his blue lights, and Cantrell pulled over, exited his car, and fled into the woods. A police dog subsequently stopped Cantrell, and he had $11,773.64 on his person. The next day, police searched the area where Cantrell ran, and they found methamphetamine approximately 20 yards from the location where Cantrell's vehicle stopped and in the area where he ran.

Cantrell also had an encounter with police in Charleston, West Virginia,[1] on December 27, 2015, when officers responded to a disturbance involving a male subject. While on their way to the scene, the officers noticed a man fitting the description of the male subject, stopped him, and identified him as Cantrell. Pursuant to a consent search, they found Cantrell to be in possession of $5,000. After the officers discovered that Cantrell had an outstanding warrant for failure to pay child support, they arrested him. During the arrest, Cantrell indicated that his vehicle was nearby. Upon locating the vehicle, an officer observed that the vehicle was running, the front windows were rolled down, there was a bullet hole in the roof above the passenger seat, there were unsecured

---

[1] Randolph County, where the indicted conduct took place, is in the Northern District of West Virginia, and Charleston is in the Southern District.

3

firearms in the back, and a strong odor of marijuana coming from the vehicle. The officers searched the vehicle and discovered approximately 3.08 grams of suspected marijuana, four firearms (including two handguns), an assortment of ammunition, a black toboggan with holes for eyes, and Cantrell's wallet.

Cantrell pled guilty to Count Three of the indictment. Although the plea agreement did not mention the possibility of a Guidelines increase pursuant to the § 2D1.1(b)(1) two-level firearm enhancement, the district court imposed the firearm enhancement based on the uncharged conduct that occurred on December 27, 2015, when Cantrell was found in possession of four firearms.[2] Cantrell objected to the enhancement, claiming that the firearms were not connected to the offense of conviction. The court overruled the objection and ultimately imposed a 70-month sentence. Cantrell now appeals the application of the § 2D1.1(b)(1) enhancement.

## II.

We review the district court's application of the § 2D1.1(b)(1) enhancement for clear error. *United States v. Manigan*, 592 F.3d 621, 630–31 (4th Cir. 2010). In order for the enhancement to apply, "the Government must prove by a preponderance of the evidence that the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." *Id.* at 628–29 (internal quotation marks omitted). The Government need not prove that possession of

---

[2] Cantrell does not dispute that he was at least in constructive possession of the weapons.

4

the firearm was "precisely concurrent" with the criminal act; rather, "proof of constructive possession of the [firearm] is sufficient, and the Government is entitled to rely on circumstantial evidence to carry its burden." *Id.* at 629. If the Government carries its burden, the enhancement will apply unless the defendant can show that the connection was "clearly improbable." *United States v. Mondragon*, 860 F.3d 227, 231 (4th Cir. 2017) .

In concluding that the enhancement applies, the district court found that "the possession of the firearm is actually book-ended by two of the violations contained in the indictment. While it happened in the Southern District rather than the Northern District, this court believes it's part of the same course of conduct. I realize that it was methamphetamine in the Northern District and it was marijuana in the Southern District, but I don't believe that that needs to be read that narrowly. It was drug distribution in both places." JA 25.

We find that the district court did not clearly err in applying the enhancement. We have explained that "so long as a firearm's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapon to the offense conduct." *Manigan*, 592 F.3d at 629 (alterations and internal quotation marks omitted). Cantrell's possession of firearms on December 27, 2015, occurred in a time period when there was a series of events leading to several arrests for possession with intent to distribute and distribution of methamphetamine between March 11, 2015, and March 10, 2016. Moreover, when Cantrell possessed the firearms, he was

5

in possession of a user amount of marijuana and a substantial amount of cash. Marijuana was also present during the event which gave rise to Count One of the indictment, and a substantial amount of cash was present during the events which gave rise to Counts One and Three of the indictment, further indicating a common scheme or course of conduct. Therefore, the record supports the findings that the Government carried its burden of showing that Cantrell possessed the firearms in connection with the drug activity that was part of the same course of conduct as the offense of conviction, and Cantrell has failed to show it was clearly improbable that the weapons were connected with the offense of conviction.

## III.

Accordingly, the district court did not clearly err in finding that the two-level firearms enhancement was appropriate, and we affirm Cantrell's sentence.

*AFFIRMED*